United States District Court
Southern District of Texas
**ENTERED**
April 04, 2016
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ARREDONDO YI, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-3289 |
| | § | |
| UNITED STATES OF AMERICA, *et al.*, | § | |
| | § | |
| Respondents. | § | |

**MEMORANDUM AND OPINION**

This case arises from the intersection of the procedures that regulate immigration proceedings and some of the substantive rights and obligations at issue in those proceedings. Arredondo Yi sued in 2014, seeking a declaratory judgment that he is a United States citizen. Yi claimed the right to relief under the Administrative Procedure Act, 5 U.S.C. § 555 *et seq.* and § 701 *et seq.*; the Mandamus Act, 28 U.S.C. § 1361; the Immigration and Nationality Act, 8 U.S.C. § 1433(a) (1999); and the Declaratory Judgment Act, 28 U.S.C. § 2201.

The government moved to dismiss on the grounds that this court lacked subject-matter jurisdiction and that Yi had failed to state a claim on which relief could be granted. (Docket Entry No. 18). Yi responded, the government replied, and both parties submitted numerous surreplies. (Docket Entries No. 31, 36, 35, 37, 40, 41, 46, 47, 48, 49, 50, 51, 52, 53). The court heard argument on the motion. (Docket Entry No. 43). Based on the motion, the response and replies, the record, the pleadings, and the arguments of counsel, the court grants the motion to dismiss. Final judgment is entered separately. The reasons are explained in detail below.

I.      **Background**

A.      **The Application to Petition for Naturalization**

Yi was born in 1971 in South Korea to Chong Pun Yi, a citizen of South Korea.  (Docket Entry No. 1 at ¶ 13).  In January 1975, his mother married Roberto Arredondo, a United States citizen and member of the United States military stationed in South Korea.  (*Id.*).  Arredondo legally adopted Yi.  (*Id.* at ¶ 13 and Ex. C ).  In February 1976, when Yi was four, he came to the United States with his father as a lawful permanent resident.  (*Id.* at ¶ 13 and Ex. E).

On January 26, 1989, about five months before Yi turned eighteen, Arredondo filed a Form N-402 Application to File Petition for Naturalization in Behalf of Child with the Immigration and Naturalization Service.  (*Id.* at ¶ 13 and Ex. F).  It is undisputed that Arredondo failed to provide all the information and documents the Application instructions called for.  The Application Arredondo filed on Yi's behalf did not include a copy of the adoption decree, a record of Yi's fingerprints, or photographs.  It did not include the date, location, or court of Yi's adoption. The Application instructions expressly required this information.  (Docket Entry No. 18, Ex. 4); UNITED STATES DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE HANDBOOK FOR CONTACT REPRESENTATIVES, 10-61 (1981).

The parties do dispute whether the government sent Arredondo a request for evidence asking for the missing information.  The government has produced a copy of the front page of a request for evidence addressed to Arredondo and reminding him that he had failed to provide required documents.  (Docket Entry No. 18 at Ex. 5).  The copy the government produced does not give a timeline for Yi to send the documents, but the government alleges that the back of the form, which

2

is not copied, would have instructed Yi to comply within thirty days or the file would be closed—not denied, but closed.

Yi disputes that the government sent the request for evidence to his father. Yi asserts that at trial, he would testify that Arredondo, who died in 2004, kept meticulous records and would have responded to any request for evidence that he received. It is undisputed that there was no response. Because of this, the agency administratively closed the file. The Application was neither granted nor denied.

Twenty-four years later, on November 6, 2013, the agency—then the USCIS— denied the application. (*Id.* at ¶ 14 and Ex. F). The USCIS based its denial on the fact that Yi was over 18, citing 8 C.F.R. § 322.2(a) (1999), for the requirement that the applicant be 18 both when he applied for, and when he is naturalized as, a citizen. (*Id.* at ¶ 14 and Ex. F). Section 322.2(a) was based on § 1433 of the Immigration and Nationality Act in effect in 1999, not on the Act in effect when Arredondo filed the Application on Yi's behalf.

Although the government sent no notice of agency action for over 20 years, neither Arredondo nor Yi followed up to ask about the status. Neither Yi nor his father filed anything beyond the incomplete Form N-402 Application to File Petition for Naturalization. No Form N-600 Application for a Certificate of Citizenship was filed, a necessary step after an Application is granted to complete the naturalization process.

3

### B.     Twenty-Four Years Later: The Denial of the 1989 Application, Removal Proceedings, and this Declaratory Judgment Action

By 2013, Yi had an extensive criminal history, including three separate misdemeanor larceny convictions between 2007 and 2013 and a felony possession of cocaine conviction in 2013.[1]  On November 21, 2013, approximately two weeks after denying the Application Arredondo had filed for Yi, the Department of Homeland Security sent Yi a notice to appear before an Immigration Judge and placed him in removal proceedings based on his criminal convictions.  (Docket Entry No. 1 at ¶ 15).   On December 11, 2013, Yi asked the Immigration Judge to terminate the removal proceedings so that he could file a federal district court action to claim that he was already a citizen.  (*Id.*).  On February 21, 2014, Yi moved for cancellation of removal, again asserting that he was a United States citizen.  (*Id.*).  The Immigration Judge denied his motion to terminate and his request for cancellation of removal on April 3, 2014, and Yi appealed to the Board of Immigration Appeals on July 18, 2014.  (*Id.*).  In October 2014, the Board reversed the denial of cancellation of removal and remanded to the Immigration Judge.  (Docket Entry No. 21 Ex. 24).

On November 12, 2014, Yi filed this declaratory judgment action.  He claims that the 24-year delay in acting on the Application Arredondo had filed, and its denial, violated the Administrative Procedure Act, 5 U.S.C. § 555 *et seq*. and § 701 *et seq*.; the Mandamus Act, 28 U.S.C. § 1361; and the Immigration and Nationality Act 8 U.S.C. § 1433 (1999).  He sought a judgment declaring him a United States citizen and an order requiring the United States and its agencies to issue him a certificate of citizenship.  (Docket Entry No. 1 at ¶ 15).

---

[1]

Yi's criminal history also includes a 1992 conviction for larceny; a 1998 arrest for embezzlement and fraud to obtain or retain possession of rented property; and a 2003 arrest for hindering apprehension or prosecution.  (Docket Entry No. 18 Ex. 7).

4

On January 16, 2015, the USCIS vacated its 2013 decision denying the Application to File a Petition for Naturalization that Arredondo had filed on Yi's behalf and issued a new decision reaching the same result, but on different grounds.  (Docket Entry No. 18, Ex. 24).  The 2013 decision was based on the fact that Yi was over 18 when the Application was denied.  The 2015 order recognized that the earlier decision erroneously applied the 1994 version of the Immigration and Nationality Act, §§ 341(a), 322(a), and the current version §§ 320, 322, not the version in effect in 1989, when Arredondo filed the Application.  Under the applicable version of the Act, the district court had jurisdiction to grant naturalization, and Arredondo had to file a Petition for Naturalization with the district court.  The 2015 decision also noted that the Application was missing required information, and that Arredondo had not responded to the 1989 request for evidence and had not filed a complete naturalization petition for Yi.[2]

The Immigration Judge cancelled the removal proceedings on April 16, 2015, and Yi was released from immigration custody.  (Docket Entry No. 42).

## II.    The Motion to Dismiss

The government has moved to dismiss under Rule 12(b)(1) based on the lack of subject-matter jurisdiction.  The government argues first that the jurisdictional exclusions of 8 U.S.C. § 1503(a)(1) and (2) apply, because Yi's citizenship claim either "(1) arose by reason of, or in connection with [a] removal proceeding . . . , or (2) is in issue in any such removal proceeding."  (Docket Entry No. 18 at 23-25).  The government also argues that Yi's claims for relief under the

---

[2] When the 2015 decision issued, Yi had filed a motion to reconsider the 2013 decision denying the Application.  The parties dispute whether the 2015 decision was in response to that motion.

Administrative Procedure Act, the Mandamus Act, and the Immigration and Nationality Act are moot because they are based on the vacated 2013 decision. (*Id.* at 25-27).

The government has also moved to dismiss under Rule 12(b)(6) for failure to state a claim. The government argues that a court cannot grant citizenship based on equitable estoppel and that in any event, Yi's allegations do not support its application. The government argues that Yi's statutory claims fail because he does not qualify for naturalization. (Docket Entry No. 34 at 21-25). Finally, the government argues that even if Yi qualified for naturalization when the agency denied the 1989 Application, the agency correctly denied it because it was incomplete. (Docket Entry No. 41 at 3).

### A.    The Legal Standard for a Motion to Dismiss under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) applies to challenges to a court's subject-matter jurisdiction. "A case is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998). "Courts may dismiss for lack of subject-matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)).

The plaintiff has the burden of showing subject-matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A district court examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of the action,

has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark*, 798 F.2d at 741. The court may consider matters outside the pleadings to resolve factual challenges to subject-matter jurisdiction without converting the motion to dismiss to one for summary judgment. *See Garcia*, 104 F.3d at 1261.

### B.   The Legal Standard for a Motion to Dismiss under Rule 12(b)(6)

A pleading is deficient and may be dismissed under Rule 12(b)(6) if the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions.'" Neither "a formulaic recitation of the elements of a cause of action," nor "a complaint [that] tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will do. *Twombly*, 550

U.S. at 557.  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550 U.S. at 555).  "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Id.* (quoting *Twombly*, 550 U.S. at 558).

On a Rule 12(b)(6) motion, a district court generally 'must limit itself to the contents of the pleadings, including attachments thereto.'  The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims."  *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

Federal Rule of Civil Procedure 15(a) states that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading . . . ."  FED. R. CIV. P. 15(a)(1).  A party may also amend if the court grants leave or the adverse party consents in writing.  FED. R. CIV. P. 15(a)(2).  The purpose of this rule is to "enable a party to assert matters that were overlooked or were unknown at the time the party interposed the original complaint or answer."  6 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1473 (3d ed. 2015).  A district

court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). "A district court must possess a substantial reason to deny a request for leave to amend, but leave to amend is by no means automatic." *Id.* (citation omitted) (quotation marks omitted). "Denial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010). A proposed amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). "[T]he same standard of legal sufficiency as applies under Rule 12(b)(6)" applies to determining futility under Rule 15. *Id.* (quotation marks omitted).

## III.  Analysis of Subject-Matter Jurisdiction

### A.  Section 1503(a)

Section 1503(a) states that a person who "claims a right or privilege as a national of the United States and is denied such right or privilege . . . upon the ground that he is not a national" may sue in federal district court "for a judgment declaring him to be a national of the United States." The government argues that Yi cannot pursue his claims through § 1503(a) because the Application Arredondo filed sought to have Yi naturalized, not that he was a citizen. *See  Robertson-Dewar v. Mukasey*, 599 F. Supp. 2d 772, 781 (W.D. Tex. 2009). Yi's complaint alleges that he "is not seeking to naturalize[,] [because he] is a citizen of the United States pursuant to his lawful adoption by his father Roberto Arredondo." (Docket Entry No. 1 at ¶ 5). Because Yi is alleging that he is already entitled to be recognized as a citizen, this argument is not a basis for dismissal.

9

### B.    The Jurisdictional Exclusions under Sections 1503(a)(1) and (2)

Sections 1503(a)(1) and (2) state that "no [§ 1503(a)] action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding . . . , or (2) is in issue in any such removal proceeding." 8 U.S.C. §§ 1503(a)(1), (2). The government argues that they exclude federal court jurisdiction over Yi's declaratory judgment action. (Docket Entry No. 18 at 23-25).

There is little case law applying § 1503(a)(1). The few decided cases consistently find that if a citizenship claim is raised for the first time in a declaratory judgment action filed while a removal proceeding is ongoing, the citizenship claim arose "by reason of, or in connection with," a removal proceeding, precluding federal court jurisdiction. *See Rios-Valenzuela v. Dep't of Homeland Sec.*, 506 F.3d 393, 398 (5th Cir. 2007); *Ortega v. Holder*, 592 F.3d 738, 746 (7th Cir. 2010). *Rios-Valenzuela* is the latest Fifth Circuit case to address the exclusion. The plaintiff in that case was born in Mexico. He was granted a green card in 1975 and moved to the United States. In 1989, he was deported based on a drug conviction. He returned to the United States in 2003, claiming to be a citizen because his mother was a citizen when she gave birth. Removal proceedings began. In May of 2004, while those proceedings were pending, the plaintiff filed a Form N-600 Citizenship Application with the USCIS. The application was denied. In January 2005, while the appeal from that denial was pending, the plaintiff filed a second Form N-600 Application with the USCIS. In March 2005, a hearing was held in the removal proceedings. At that hearing, the plaintiff presented evidence of his citizenship, and the USCIS terminated the removal proceeding without prejudice.

10

In April 2005, the appellate tribunal affirmed the denial of the first citizenship application. In August 2005, the plaintiff was notified that more information about his mother's citizenship was needed.  In October 2005, the plaintiff filed a declaratory judgment action in federal district court. In November 2005, the USCIS denied the second Form N-600 Citizenship Application on the ground that the plaintiff had failed to provide required information.  The district court dismissed the claims under § 1503(a)(1).  While the appeal from the district court's dismissal was pending, the government initiated new removal proceedings, implicating § 1503(a)(2) as well.

The Fifth Circuit held that § 1503(a)(2) did not bar jurisdiction because the plaintiff had filed the declaratory judgment action before the second removal proceeding began.  Under § 1503(a)(2), citizenship cannot, "logically, be 'in issue in [a] removal proceeding' unless there is a removal proceeding pending."  *Id.* at 397 (citing § 1503(a)(2)) (alteration in original).  The court noted that Congress had specified two ways to apply for citizenship: one by prospective application and the other by defensive assertion in removal proceedings.  Sections 1503(a)(1) and (2) were designed to preserve this two-track system by preventing individuals from "circumvent[ing] the administrative removal process" through actions collateral to the removal proceedings.

The *Rios-Valenzuela* court then turned to the specific jurisdictional bar of § 1503(a)(1).  The court noted that "[i]t is the context of how the particular issue of citizenship arose rather than the mere timing of events that determines the applicability of § 1503(a)(1)."  *Id.* at 398.  Although the plaintiff's citizenship application was separate from his declaratory judgment action, the issue of his citizenship nonetheless arose in the removal proceeding because "the exception focuses on the

proceeding in which the particular claim to citizenship originates, not the proceeding in which it is being pursued." *Id.*

Filing a declaratory judgment action before removal proceedings begin generally does not circumvent the administrative process, and the citizenship claim does not "ar[i]se . . .by reason of, or in connection with," the removal proceedings. *See Raya v. Clinton*, 703 F. Supp. 2d 569, 575 (W.D. Va. 2010) (§ 1503(a)(1) does not bar a declaratory judgment action filed in response to the denial of a passport application, before removal proceedings began); *compare Rios-Valenzuela v. Dep't of Homeland Sec.*, No. EP-05-CA-0389-FM, 2006 WL 897710, at *3 (W.D. Tex. Mar. 30, 2006) ("Notably, Petitioner did not file his Form N-600, Application for Citizenship, prior to his apprehension for illegal reentry or the commencement of removal proceedings, a situation where this court would have had jurisdiction.").

In *Raya v. Clinton*, the plaintiff had applied for a United States passport. The application was denied. A few years later, she was placed in removal proceedings. After those proceedings began, the plaintiff filed a declaratory judgment action in the district court, challenging the passport denial. The district court held that it had jurisdiction because the plaintiff had initiated her declaratory judgment action claiming citizenship before the removal proceedings began. 703 F. Supp. 2d at 573-75. But as the cases recognize, even if a citizenship claim is asserted before a removal proceeding has begun, that claim may still arise "by reason of, or in connection with," the removal proceeding if the context shows that the proceeding motivates the citizenship claim. *See Patino v. Chertoff*, 595 F. Supp. 2d 310, 313-14 (S.D.N.Y. 2009). In *Patino*, after the plaintiff received notice that he would be placed in removal proceedings, but before they began, he sued in federal district court seeking a declaratory judgment of citizenship. The court held that § 1503(a)

12

barred the declaratory judgment action, even though it preceded the removal proceeding.  The declaratory judgment action was clearly motivated by the impending removal proceeding and therefore "arose . . . in connection with" it.  *Patino*, 595 F. Supp. 2d at 313-14.

Yi argues that this case falls under *Raya* because his father had filed the Application to File a Petition for Naturalization long before any removal proceeding began.  But in *Raya*, the plaintiff asserted her citizenship claim by applying for a passport before any removal proceeding was in sight.  She did not seek to circumvent the administrative removal process when she applied for a passport on the basis of her citizenship or sought a declaratory judgment that she was a citizen entitled to a passport.  By contrast, Arredondo filed the Application to File a Petition for Naturalization on Yi's behalf; he did not claim that Yi was already a citizen.  Yi did not assert that he was already a citizen, making naturalization unnecessary, until after he was in removal proceedings.  The issue under § 1503(a)(1) is the connection between a *citizenship* claim and removal proceedings.  The 1989 Application was an application to petition for *naturalization*.  Yi did not claim *citizenship* until after the removal proceedings had begun.    This case is more like *Patino* than *Raya.*

The context of Yi's declaratory judgment action shows that it was motivated by the removal proceedings and Yi's likely removal.  After filing the Application to File a Petition for Naturalization on Yi's behalf, neither Arredondo nor Yi followed up, despite the absence of any notice of agency action.  The Application sat dormant for 24 years.  It was not until Yi amassed a lengthy criminal record and was placed in removal proceedings that he asserted and pursued the claim that he is entitled to a declaration and certificate of citizenship.  The citizenship claim in this declaratory judgment action arose "by reason of, or in connection with" the removal proceeding

against Yi, even though this action challenged the delay in deciding, and the denial of, the 1989 Application to File a Petition for Naturalization.  Although the Application was filed long before Yi's removal proceedings began, the context, including the decades-long failure to pursue the Application, shows that this declaratory judgment action was filed to circumvent the administrative removal process.  *Rios-Valenzuela*, 506 F.3d at 398 ("It is the context of how the particular issue of citizenship arose rather than the mere timing of events that determines the applicability of § 1503(a)(1).").

The fact that Yi's removal proceeding has ended does not remove the jurisdictional bar.  The court in *Rios-Valenzuela* rejected the argument that terminating removal proceedings made § 1503(a)(1) inapplicable.  This outcome did not forever bar a citizenship claim, as the plaintiff had argued, because "once removal proceedings have run their full course and terminated," the plaintiff could file a new citizenship application.  *Id.* at 399.  Because that new application would have "its genesis outside of the context of removal proceedings," it would not be barred under § 1503(a)(1). *Id; see also Olopade v. Attorney Gen. of U.S.*, 565 F. App'x 71, 73 (3d Cir. 2014) (dismissing declaratory judgment action after removal proceedings had terminated because the citizenship claim originated in the removal proceedings).

The court lacks jurisdiction over this action under § 1503(a)(1).  The termination of the removal proceeding against Yi did not remove the § 1503(a)(1) jurisdictional bar so as to restore or confer federal court jurisdiction over his declaratory judgment action.  Instead, the proper approach is to dismiss this declaratory judgment action and allow Yi to file a new citizenship application, and, if that application is denied, seek judicial relief.  *See Rios-Valenzuela*, 506 F.3d at 398; *see also Said v. Eddy*, 87 F. Supp. 2d 937, 941 (D. Alaska 2000).

The court also lacks jurisdiction under § 1503(a)(2).  The court in *Rios-Valenzuela* held that § 1503(a)(2) did not apply to a declaratory judgment action filed before removal proceedings began, even if citizenship was an issue in the removal proceedings.   *Rios-Valenzuela*, 506 F.3d at 397. The court explained that § 1503(a)(2) "states that a [declaratory judgment action] may not be instituted when the claimant's citizenship is in issue in a removal proceeding.  The exception does not say that a purported citizen may not maintain or continue an already filed declaratory judgment action when the Government subsequently begins removal proceedings and citizenship there comes into issue." (*Id.*).  Yi filed this action when a citizenship claim was already at issue in his pending removal proceeding.  (*Id.*).  The § 1503(a)(2) bar applies.

*Rios-Valenzuela*'s ruling that the proper procedure for a claim barred by § 1503(a)(1) is to dismiss the declaratory judgment action and allow the plaintiff to file a new citizenship application applies to dismissals based on § 1503(a)(2) as well, if no removal proceeding is pending when the new application is filed.  Dismissal and refiling of an action barred by § 1503(a)(1), if no removal proceeding is now pending, means that the citizenship claim did not arise by reason of, or in connection with, a removal proceeding.  *Id.* at 399.  Dismissal and later refiling of an action barred by § 1503(a)(2) when no removal proceeding is consistent with *Rios-Valenzuela*'s focus on the word "instituted."  The court held that § 1503(a)(2) did not bar the declaratory judgment action because it was "instituted" before the removal proceeding had begun.  The issue under § 1503(a)(2) was not whether a declaratory judgment could be maintained while removal proceedings were pending, but whether the action was instituted while removal proceedings were pending.  When, as in this case, the plaintiff institutes the declaratory judgment action when a removal proceeding is ongoing, cancellation of the removal proceeding during the action does not remove the bar.  The fact that Yi's

removal proceeding was ongoing is not the basis of the § 1503(a)(2) bar.  The bar arises because the action was never properly instituted.

The court lacks subject-matter jurisdiction under § 1503(a)(1) and (2).

**B.      Yi's APA and Mandamus Claims are Moot**

Yi's claims under the Administrative Procedure Act and the Mandamus Act are based on the USCIS's 2013 order denying Arredondo's 1989 Application to File a Petition for Naturalization on Yi's behalf.  That decision was vacated.  Yi chose not to amend his complaint after the 2015 order issued  again denying the Application, but on different grounds than in 2013.  The government argues that because Yi's claims are based on the vacated 2013 order, they are moot.  (Docket Entry No. 18 at 25-27).  Yi responds that the court should not treat his claims as moot because the different grounds relied on in 2015 are *post hoc* rationalizations that should be disregarded. (Docket Entry No. 31 at 9-11).

The fact that an interpretation or basis for a particular result is new and asserted in response to arguments made in litigation does not necessarily make the interpretation or basis impermissible. *Talk Am., Inc. v. Michigan Bell Tel. Co.*, 564 U.S. 50 (2011).  The question is whether the court has "reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question."  *Id.* (quoting *Auer v. Robbins*, 519 U.S. 452, 462 (1997)).  The 2013 decision denied the 1989 Application because Yi had "aged out."  The 2015 decision recognized the error in this ruling and denied the Application because Arredondo had failed to include documents and information about Yi's adoption or otherwise take steps required to complete the Application and to petition for naturalization.

16

Changing and correcting the basis for the result reached earlier when litigation arguments have shown that basis is wrong is not in itself an impermissible *post hoc* rationalization.  And the usual remedies for *post hoc* rationalization are less drastic than reversing the result, as Yi argues.  If a court finds that an agency has engaged in *post hoc* rationalization, court apply closer scrutiny and little deference.  *Talk Am., Inc.*, 564 U.S. 50; *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) ("Such an explanation will, to some extent, be a '*post hoc* rationalization' and thus must be viewed critically.").

The court has closely scrutinized the 2015 and 2013 decisions and concluded that the agency's 2015 decision recognizing the problem in the earlier decision and changing the grounds for denial are not impermissible *post hoc* rationalizations.  *See Overton Park*, 401 U.S. at 419-21 (at most, the agency's post-remand findings "will, to some extent, be a 'post hoc rationalization' and thus must be viewed critically.").  Yi's arguments against mootness are unpersuasive.

Because Yi's claims under the Administrative Procedure Act, the Mandamus Act, and the Immigration and Nationality Act are based on a decision that has been vacated, his claims are also subject to dismissal as moot.[3]

---

[3]

Yi's claims based on delay are also unpersuasive.  The agency closed the file in 1989 because it was incomplete; the agency did not deny the Application.  Arredondo failed to follow the instructions that he clearly did receive, not in the request for evidence, but in the Application itself. And neither Yi nor Arredondo followed up despite the decades of agency inaction that followed.

C.        **Equitable Estoppel**

Yi emphasizes the government's delay in adjudicating the 1989 Application to File a Petition for Naturalization and argues that even if Arredondo did not submit a completed Form N-402 Application with the USCIS, and even if neither Yi nor Arredondo filed a Petition for Naturalization with the district court, the government should be equitably estopped from denying Yi's citizenship, or in the alternative, the court should invoke its equitable power to declare him a citizen.  (Docket Entry No. 31 at 13-24).

In *I.N.S. v. Pangilinan*, 486 U.S. 875, 884-85 (1988), the Supreme Court held that district courts cannot confer citizenship based on equitable estoppel.  The plaintiffs in *Pangilinan* were Filipino nationals who served with the United States military during World War II.  Congress enacted a special immigration statute that allowed individuals like the plaintiffs to petition for naturalization.  The statute expired in 1946.  Because of concerns over emigration from the Philippines, the Immigration and Naturalization Service revoked the authority of the government official responsible for naturalizing Filipino service members for a nine-month period.  The plaintiffs sued in federal district court over 40 years later, asking the district court to confer citizenship on them.  The plaintiffs had not completed the naturalization process before the statute expired in 1946, and they conceded that they did not qualify for naturalization under that statute.  They argued, however, that the court could use equitable estoppel to declare them citizens, based on the misconduct of the Immigration and Naturalization Service in temporarily revoking the official's authority to naturalize.  *Pangilinan*, 486 U.S. at 877-82.

The Supreme Court rejected this theory.  Article I of the Constitution grants Congress the power "[t]o establish an uniform Rule of Naturalization, and Congress used that authority to

prescribe conditions under which an individual could become naturalized.  The Immigration and Nationality Act states that "[a] person may be naturalized . . . in the manner and under the conditions prescribed in [the Immigration and Nationality Act], and not otherwise." *Id.* at 883-84 (quoting 8 U.S.C. § 1421(d).) Courts do not have equitable authority to ignore those requirements, and Congress has not otherwise given the courts equitable power to confer citizenship even if the statutory requirements are not met.  *Id.*

Yi argues that *Pangilinan* is distinguishable because he does not only ask this court to declare him a citizen, but also to direct the agency to declare him a citizen.  (Docket Entry No. 23-24.)  Yi is still asking this court to use equitable estoppel to alter the conditions under which he can be naturalized.  *Pangilinan* held that the statute foreclosed this.  *See i.d.* at 884-85.

Yi also argues that *Pangilinan* is distinguishable because the plaintiffs in that case did not file naturalization applications within the statutory time frame, while Arredondo filed the Application five months before Yi would "age out."  (Docket Entry No. 31 at 23-24.)   But *Pangilinan's* holding rested on the courts' lack of authority to disregard the naturalization requirements, not on the plaintiffs' lack of diligence in applying for naturalization.

Even assuming that a lack of diligence is a meaningful distinction in general, it does not distinguish this case.  Like Yi, one of the plaintiffs in *Pangilinan* made initial but incomplete efforts to petition for naturalization during the statutory time frame.  *Id.* at 881.  The Court held that he could not assert equitable estoppel.  *Id.* at 884-85.

This court does not have the power to confer citizenship, or to order the USCIS to confer citizenship, under a theory of equitable estoppel.  And even assuming that the court had the power

to order the USCIS to declare Yi a citizen based on equitable estoppel, Yi has not established that

he is entitled to that relief.

"Courts have been exceedingly reluctant to grant equitable estoppel against the government."

*Robertson-Dewar v. Holder*, 646 F.3d 226, 229 (5th Cir. 2011) (citing *Office of Pers. Mgmt. v.

Richmond*, 496 U.S. 414 (1990)).  "[T]he burden that a petitioner must meet is very high."  *Id.* at

230.  To obtain relief under  equitable estoppel, a party must show "(1) affirmative misconduct by

the government, (2) that the government was aware of the relevant facts and (3) intended its act or

omission to be acted upon, (4) that the party seeking estoppel had no knowledge of the relevant facts

and (5) reasonably relied on the government's conduct and as a result of his reliance, suffered

substantial injury."  *Id.* at 229.  "Mere negligence, delay, inaction, or failure to follow an internal

agency guideline" does not constitute misconduct.  *Fano v. O'Neill*, 806 F.2d 1262, 1265 (5th Cir.

1987).

*Roberston-Dewar* is instructive.  The plaintiff's father submitted a Form N-600 Application

for a Certificate of Citizenship on the plaintiff's behalf in 1996.  A Form N-400 should have been

filed, not the Form N-600, which is for an applicant filing on behalf of himself claiming that he is

already a United States citizen.  The USCIS did not adjudicate the application until December 18,

2006, four days after plaintiff was placed in removal proceedings for a criminal conviction.  The

agency's denial was based, incorrectly, on the version of 8 U.S.C. § 1432 repealed in 2000.  The

correct statute was the version of § 1433 in effect in 1996.  Under that statute, the plaintiff was

required to be 18 at both the time of filing and when he was admitted to citizenship.  The plaintiff

was eventually ordered removed.  After losing at the BIA, he appealed to the Fifth Circuit, arguing

that the government should be equitably estopped because the agency's delay in adjudicating his application caused him to age out. *Robertson-Dewar*, 646 F.3d at 229-30.

The Fifth Circuit held that, assuming equitable estoppel was permissible, the plaintiff had not established his entitlement to relief. The government's delay was not "affirmative misconduct . . . that goes beyond mere negligence or delay." *Id.* at 230. The plaintiff had not shown that the "government delayed ruling on his application with the intent of not acting therein until after he had aged out of the statute." *Id.* Nor had the plaintiff shown reliance, because he "admit[ed] that he was told in 1999 that he was not a citizen, and neither he nor his father adequately followed up on the naturalization application." *Id.*

Like the plaintiff in *Robertson-Dewar*, Yi has at most shown agency delay or negligence. Yi has not shown that the USCIS delayed for the purpose of having him age out. Nor has Yi shown reliance on agency action. Yi argues in his response to the motion to dismiss that he did not know about the request for evidence, but this lack of knowledge does not form the basis of his equitable estoppel theory in his complaint. And Arredondo did have notice of the Application filing instructions, which he failed to follow, and both Arredondo and Yi failed to follow up on the Application despite the decades without any notice of agency action.

The fact that the plaintiff in *Roberston-Dewar* had been notified after applying for citizenship that he was not a citizen does not change the outcome here. Although it is disputed whether Arredondo received the request for evidence, he clearly received no notice of either agency approval or denial. Yi knew or should have known from the lack of agency action on the Application that it had not been approved. The lack of notice was also only one of the reasons that the plaintiff in *Robertson-Dewar* did not establish reliance. The other reason was that, like Yi, the plaintiff had not

followed up on the application, despite the long delay.  Finally, the lack of notice would still only

be negligence, not affirmative misconduct, and would not show intent.  Yi's arguments against

dismissal are unpursuasive.

## V.     The Analysis under Rule 12(b)(6) for Failure to State a Claim

Even assuming that this court has jurisdiction over this declaratory judgment action,

dismissal would still be required because Yi has not stated a claim for relief under the

Administrative Procedure Act or the Mandamus Act.

### A.      The Administrative Procedure Act

Review of USCIS action under the Act is limited to whether the agency's decision was

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  *Nat'l

Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989) (citing 5 U.S.C. § 706(2)(a)).

While the district court's role is to ensure that the agency engaged in "reasoned decision-making,"

the agency is "entitled to considerable deference in its interpretation of the governing statute."  *Id.*

(internal citations omitted).  An agency like the USCIS acts arbitrarily and capriciously if it "has

relied on factors which Congress has not intended it to consider, entirely failed to consider an

important aspect of the problem, offered an explanation for its decision that runs counter to the

evidence before the agency, or is so implausible that it could not be ascribed to a difference in view

or the product of agency expertise.  *Brown v. Napolitano*, 391 F. App'x 346, 350 (5th Cir. 2010)

(quoting *Tex. Oil & Gas Ass'n v. U.S. EPA*, 161 F.3d 923, 933 (5th Cir. 1998)).  Agency action is

arbitrary and capricious "only when it is so implausible that it could not be ascribed to a difference

in view or the product of agency expertise."  *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215

(5th Cir. 1993) (quotation omitted).  "The agency decision need only have a rational basis, and it

does not have to be a decision which the court would have made." *Id.* In reviewing a challenge to the agency's decision, "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fed Power Commission v. Transcontinental Gas Pipeline Corp.*, 423 U.S. 326, 331 (1976); *see also Luminant Generation Co., LLC v. EPA*, 714 F.3d 841, 850 (5th Cir. 2013) (quoting *Fed Power Commission*, 423 U.S. at 332)).

In 1989, a parent who was a United States citizen could seek naturalization for a child by filing a Petition for Naturalization with the district court. 8 U.S.C. § 1433 (1989). Before submitting a Petition, an individual had to submit an Application to File a Petition with the Immigration and Naturalization Service. 8 C.F.R. §§ 322.1, 332a.2, 334.11 (1988). Regulations required the Form N-402 to apply. 8 U.S.C. § 1433 (1989). 8 C.F.R. §§ 322.1; 499.1 (1989).

It is undisputed that Arredondo had access to the instructions for completing the Form N-402 Application and that those instructions required him to attach specified documents and include information about Yi's adoption status. It is also undisputed that the Application Arredondo submitted did not contain this information. Because the regulations required a complete Application, and neither Arredondo nor Yi completed these requirements, the agency's decision was not arbitrary or capricious.

Yi argues that the USCIS's internal procedures required it to send Arredondo notice of the deficiencies in the Application. (Docket Entry No. 31 at 26). But failure to follow internal procedures is not in itself sufficient to require agency action. *Ponce-Gonzalez v. I.N.S.*, 775 F.2d 1342, 1346 (5th Cir. 1985) ( "Operations Instructions are, however, only internal guidelines for INS personnel, and neither confer upon petitioner substantive rights nor provide procedures upon which

he may rely.").  To the extent it forms the basis of Yi's statutory and equitable estoppel claims, the failure is an insufficient basis for the relief Yi seeks.

Yi also argues that the USCIS's failure to consider its own delay in ruling on the Application makes its decision arbitrary and capricious.  (*Id.*).  But Yi does not explain how this delay is a proper ground for granting the Application and does not cite authority supporting that result.

Even if the government's delay in ruling on the application or its failure to follow internal procedures provide a basis to find the USCIS's decision arbitrary or capricious, the government would have a valid laches defense to those arguments.  *See Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 711 (5th Cir. 1994) (affirming district court's dismissal of plaintiffs' claims because plaintiffs' delay in bringing suit caused the loss of important evidence).  Yi's failure to pursue his claim has caused the loss of evidence critical to his citizenship claim.

The USCIS's action was not arbitrary or capricious and is not a basis for the relief Yi seeks. The claim under the Administrative Procedure Act is dismissed.

### B.    Mandamus

Mandamus relief is proper if the plaintiff demonstrates "(1) a clear right to the relief, (2) a clear duty by the respondent to do the act requested, and (3) the lack of any other adequate remedy." *Offiong v. Holder*, 864 F. Supp. 2d 611, 627 (S.D. Tex. 2012) (citing *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980)).  For the same reasons that the USCIS's actions were not arbitrary or capricious, Yi has not established a clear right to relief.  This claim is dismissed.

### VI.    Conclusion

The court lacks jurisdiction over this action, and it is dismissed.  This dismissal does not prevent Yi from pursuing the alternate routes laid out in *Rios-Valenzuela*.  An order dismissing the case is entered by separate order.

SIGNED on March 31, 2106, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

25